# Richmond

## Francis L. Caputo, Et Al. v. Eleanore Holt, Administratrix, Etc.

September 2, 1976.

Record No. 751153.

Present, All the Justices.

*John F. Rixey (Thomas M. Whiteman; Rixey & Heilig,* on brief), for plaintiffs in error.

*Michael Wayne Price (Richard J. Tavss; William L. Perkins, III, Guilford D. Ware; Sacks, Sacks & Tavss; Crenshaw, Ware & Johnson,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

Catherine Speller died intestate on August 26, 1972, from injuries sustained on August 5, 1972, when she was struck by a truck operated by appellant Francis L. Caputo and owned by appellant Old Dominion Freight Lines. Claiming the right as decedent's son and only heir, William E. Speller qualified as administrator of the estate on September 1, 1972. On September 5, 1972, appellants' liability insurance carrier issued a draft in the sum of $20,000, payable to the estate and its attorney, and William E. Speller executed a "General Release" releasing appellants from all liability. The transaction was consummated without seeking court approval. The draft was negotiated and, after payment of hospital and medical expenses and attorney's fee and costs, the balance of $9,030.44 was paid to William E. Speller in his capacity as administrator.

Decedent was survived by three sisters. On October 8, 1973, they filed a petition to remove William E. Speller as administrator. At the hearing, the evidence showed that William was not decedent's son but her nephew; that, although never adopted, he had been reared from infancy by decedent and her husband; that decedent's husband had predeceased her; and that although William had heard rumors that decedent was not his mother, he did not learn the truth until some time after he had executed the release. The court accepted William's resignation and appointed appellee, Eleanore Holt, administratrix of decedent's estate.

On December 20, 1973, appellee filed a motion for judgment against appellants claiming damages for wrongful death. Appellants answered and filed a separate plea of release which the trial court denied. At the close of appellee's evidence and at the close of all the evidence, appellants moved to strike on the ground that appellee had failed to plead damages for solace. These motions were overruled, and the jury returned a verdict for appellee in the sum of $25,000. After the trial court overruled appellants' motion to set the verdict aside, appellants filed a plea of "partial accord and satisfaction" asking for

a credit of $20,000 against the verdict. The trial court denied the plea and by final order dated June 6, 1975, entered judgment on the verdict and directed that the award be apportioned equally among decedent's three sisters.

We consider first whether appellants' plea of release should have been sustained.

Appellants contend that "the common law rule applies that an Administrator has the power to compromise claims of the estate of a decedent without court approval." But Code § 8-636 (Cum. Supp. 1973) (Repealed, Acts, 1974, c. 444), the statute in effect when this cause of action arose, provided expressly that "[n]o recovery hereunder shall be deemed to be assets of the estate of the decedent. . . ." If the recovery is not an asset of the estate, the claim is not, and a personal representative's authority to compromise such a claim exists only by statutory grant. That grant is found in Code § 8-639 (Cum. Supp. 1976) which provides in part:

> "The personal representative of the deceased may compromise any claim to damages arising under or by virtue of § 8-633, including claims under the provision of an automobile insurance policy, before or after action brought, with the approval of the judge of the court wherein any such action has been brought, or if none has been brought, with the consent of the judge of any court wherein such action may be brought. Such approval may be applied for by the personal representative, on petition to such judge, in term or vacation, stating the compromise, the terms thereof, and reasons therefor, and convening the parties in interest . . ."

Appellants argue that "[t]his section is permissive" and simply creates an optional judicial mechanism "to protect the administrator against the claims of others who might later surface to assert a claim." Legislative history contradicts this argument. Prior to adoption of this section in its present form in 1960, the first sentence of Code § 8-639 (Repl. Vol. 1957) authorized a personal representative to compromise a wrongful death claim without court approval if he obtained "the consent of the persons who would be entitled to the damages recovered". If, "from any cause", he could not obtain such consent, the remainder of the section authorized him to convene "the parties in interest" and apply for court approval. By Acts, 1960, cc. 35, 587, the General Assembly eliminated the authority to compromise without court approval but left intact the authority to compro-

mise with court approval. Manifestly, the legislative purpose in changing the old law was to require court approval of all compromises in order better to protect those the legislature had selected as beneficiaries. In light of that purpose, we construe the word "may" as used in the second sentence of this statute to be mandatory.* Under that construction, the first sentence grants the authority to compromise, and the second specifies the condition of that authority.

We hold that, absent court approval acquired in the manner provided by law, the release executed by William E. Speller was not binding upon appellee or the statutory beneficiaries, and that the plea of release was properly denied.

■ Appellants insist that, even so, "if the administrator [William E. Speller] failed to obtain court approval and disbursed these funds incorrectly, the remedy of the plaintiff in this action [appellee] is to proceed against [Speller]." Whatever remedy lies against Speller does not lie in favor of appellee. As the duly qualified administratrix of decedent's estate, appellee has standing to sue for recovery of assets of the estate. But, as we have said, the money in Speller's hands was not originally and is not now an asset of decedent's estate.

■ What we have said concerning the plea of release bears upon the question concerning the plea of accord and satisfaction. Without deciding whether, as appellee contends, the plea of accord and satisfaction was filed too late, we hold that it was properly denied. There was never any accord between the wrongdoer and the statutory beneficiaries. In his individual capacity, William E. Speller was a legal stranger to the class of beneficiaries created by the statute, and, absent court approval of the compromise, the accord he gave and the satisfaction he received in his representative capacity did not bind that class or satisfy its claim, in whole or in part.

■ Appellants contend that they were prejudiced by a variance between the pleadings and the proof. Appellee pleaded "compensatory" damages but produced no evidence of pecuniary loss. Holding that "the sole question is the compensatory damages, which I am going to construe as broad enough to cover a claim for solace", the trial court overruled appellants' motions to strike appellee's evidence and submitted the case to the jury under an instruction authorizing "such

---

* "The word 'may' is *prima facie* permissive, importing discretion, but the courts construe it to be mandatory when it is necessary to accomplish the manifest purpose of the Legislature." *Chesapeake & O. Ry. Co.* v. *Pulliam,* 185 Va. 908, 916, 41 S.E.2d 54, 58 (1947). *See also Masters* v. *Hart,* 189 Va. 969, 979, 55 S.E.2d 205, 210 (1949); *Pearson* v. *Supervisors,* 91 Va. 322, 333-34, 21 S.E. 483, 485 (1895); *Leigton* v. *Maury,* 76 Va. 865, 870 (1882).

damages as to you may seem fair and just, not to exceed Twenty-five Thousand Dollars . . . by way of solace and comfort . . . for the sorrow, suffering and mental anguish occasioned. . . ."

The variance of which appellants complain was, at most, a semantical distinction without a substantive difference. When variance between pleadings and proof appears, a trial court may permit amendment, or, in lieu of amendment, "may direct the jury to find the facts, and, after such finding, if it consider the variance such as could not have prejudiced the opposite party, shall give judgment according to the right of the case." Code § 8-217 (Repl. Vol. 1957).

> "The rule that the proofs must correspond with the allegation is fully recognized, but like every other rule should be reasonably applied. Its purpose is to prevent surprise. Where there is no surprise to the party invoking it, there is no good reason for enforcing the rule." *Kennedy* v. *Mullins*, 155 Va. 166, 180, 154 S.E. 568, 572 (1930).

We believe appellants suffered no surprise. They knew that appellee was claiming the benefits authorized by the wrongful death statute, one of which was "such damages for solace as . . . may seem fair and just". As they were aware, decedent's hospital and medical expenses had been paid out of the proceeds of the settlement, and the motion for judgment did not allege dependency upon or loss of the services of the decedent. Appellants' failure to demand a bill of particulars explicating the word "compensatory" shows that they entertained no doubt as to what appellee's claim for compensatory damages was intended to embrace, and their failure to object to solace-related evidence as it was introduced reveals that they were not surprised by the proof. The instruction of the trial court, tailored to the provisions of the statute, was supported by the evidence, and we hold that appellants suffered no prejudice by variance between pleadings and proof.

Finding no error below, we affirm the judgment.

*Affirmed.*